UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ANTONIO TORRES, | ) | |
| | ) | |
| Plaintiff, | ) | No. 16 C 08065 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| MERCK SHARP & DOHME CORP., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Antonio Torres has worked at Merck Sharp & Dohme as a customer representative since 2007. R. 44, First Am. Compl. at 2.[1] Torres alleges that Merck took away career opportunities after finding out that he has rheumatoid arthritis and then took further retaliatory action once Torres filed a complaint with the Equal Employment Opportunity Commission (EEOC). *Id.* at 4-5, 17-18. Torres contends that either his disability or race or national origin was a motivating factor in Merck's actions. *Id.* at 4. Along with the substantive discrimination claims, he also alleges that the company violated the Illinois Whistleblower Act, 740 ILCS 174/1 *et seq.*, by retaliating against him when he complained about the discrimination. First Am. Compl. at 17-19;[2] *see also* R. 38, Pl.'s Resp. Br.[3] Merck

---

[1]Citations to the record are noted as "R." followed by the docket number and the page or paragraph number. Because Torres partially restarted paragraph numbering under each count in his complaint, citations to the complaint are by page number rather than paragraph number.
[2]The Whistleblower Act claim is Count 5 in the First Amended Complaint, First Am. Compl. at 17-19, and is unchanged from the original Complaint, R. 1 at 17-20.
[3]This Court has subject-matter jurisdiction over the federal claims under 28 U.S.C. § 1331, and supplemental jurisdiction over the state-law claims under 28 U.S.C. § 1367.

now moves to dismiss the state whistleblower claim under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing that that claim is preempted by the Illinois Human Rights Act, 775 ILCS 5/1-101 *et seq*. R. 6, Def's. Mot. to Dismiss; *see also* R. 7, Def.'s Br.; R. 41, Def.'s Resp. to Mot. for Leave (construed as Defendant's reply to the motion to dismiss, R. 43, Minute Entry, Jan. 12, 2017).[4] For the reasons discussed below, Merck's motion to dismiss is denied.

**I. Background**

For purposes of this motion, the Court accepts as true the allegations in the First Amended Complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Torres, a resident of Illinois, started working for Merck, a New Jersey corporation, in 2007. First Am. Compl. at 2. Torres served as a Senior Customer Representative for the company, assigned to the Lake Michigan West region (mostly in Cook County, Illinois). *Id.* From June 2014 to late January 2015, Torres promoted the sale of Januvia, one of Merck's drug products, and saw significant regional success in his role. *Id.* at 3. From February 2015 to July 2015, Torres promoted Belsomra, a sleep aid. *Id.*

Torres has rheumatoid arthritis, a disability that can lead to difficulty in walking and performing other physical tasks, as well as fatigue, fever, and joint stiffness. First Am. Compl. at 2. From March 23 to April 10 of 2015, Torres was ill and had to take sick leave from work. *Id.* at 3. About a week after he returned,

---

[4]Merck's Motion to Dismiss also originally targeted Count 6, Torres' federal retaliation claim under Title VII, 42 U.S.C. § 2000e-3. Def.'s Mot. to Dismiss. At a motion hearing held on January 12, 2017, Torres' motion to file a First Amended Complaint was granted and Merck was directed to file an Answer to all but Count 5, the sole remaining target of the dismissal motion. Minute Entry, Jan. 12, 2017.

2

Torres told his immediate supervisor, Chris Swanson, that he (Torres) had been diagnosed with rheumatoid arthritis. *Id.* Torres needed to miss another day because of illness on April 29, 2015, after which Swanson told him not to let it happen again. *Id.*

About a month later, on May 21, Swanson allegedly congratulated Torres on his "excellent performance" and then went on to ask what medications Torres was taking for his rheumatoid arthritis. First Am. Compl. at 4. Word of Torres' condition seemed to spread, because a week after that, Merck's Regional Director Rob Church asked Torres if he had rheumatoid arthritis. *Id.* When Torres responded to Church that he did have the ailment, Church allegedly told Torres that, starting July 1, 2015, Torres could no longer sell Belsomra. *Id.* Torres says this was a "demot[ion]," and as a result he has received "fewer duties, responsibilities, and sales expectations, less job security and is more susceptible for layoff or job elimination than his previous position." *Id.* Torres' complaint also alleges an instance of racial or national origin discrimination: in February of 2015, Torres' supervisor Jerry Lubben asked Torres, a Mexican, "why Mexicans do not enjoy getting up early in the morning." *Id.* at 3.

Torres filed charges of disability, race, national origin, and color discrimination with the EEOC on July 21, 2015. First Am. Compl. at 5. He maintains that Merck then falsely lowered his 2015 performance rating (which was released in March 2016), putting him in the bottom 5th to 10th percentile of employees, despite his previously acknowledged strong job performance. *Id.* at 4.

3

Torres argues that this reduction of his work score, which he believes was based on either disability, race, or national origin discrimination (or associated retaliation), has also damaged his long term career prospects and caused other types of suffering. *Id.* at 4-5.

Based on these allegations, Torres brought ten counts against Merck in the First Amended Complaint: (i) two American with Disabilities Act violations, specifically, for the initial demotion (Count 1) and the other for the subsequent false performance rating (Count 7), First Am. Compl. at 1-9, 24-27; (ii) two Title VII race discrimination counts, for demotion (Count 2) and false ratings (Count 8), *id.* at 9-11, 27-30; (iii) race discrimination counts for demotion and false ratings under 42 U.S.C. § 1981 (Counts 3 and 9), *id.* at 11-14, 30-32; (iv) two Title VII national origin discrimination counts, for demotion and false ratings, (Counts 4 and 10), *id.* at 14-16, 33-36; (v) an Illinois Whistleblower Act violation for retaliation (Count 5), 740 ILCS 174/1 *et seq.*, *id.* at 17-19; and (vi) a Title VII retaliation claim (Count 6), *id.* at 20-23. Merck now moves to dismiss Count 5, the Illinois whistleblower claim, for lack of subject matter jurisdiction and failure to state a claim. *See* Def.'s Mot. to Dismiss; Def.'s Br.

## II. Standard

Merck brings its motion under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Rule 12(b)(1) motions test whether the Court has subject-matter jurisdiction, *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009); *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir.

1999), while Rule 12(b)(6) motions test the sufficiency of a complaint, *Hallinan*, 570 F.3d at 820; *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). When reviewing a motion to dismiss under either rule, the Court accepts as true all factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

Under Rule 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (internal quotation marks and citation omitted). These allegations "must be enough to raise a right to relief above the speculative level," *id.*, and must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). The allegations entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678-79.

In assessing a Rule 12(b)(1) motion, the plaintiff bears the burden of establishing subject matter jurisdiction. *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588–89 (7th Cir. 2014). "When ruling on a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the district court must accept as true all well-pleaded factual allegations,

5

and draw reasonable inferences in favor of the plaintiff." *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995). "[A] factual challenge lies where the complaint is formally sufficient but the contention is that there is in fact no subject matter jurisdiction. … [W]hen considering a motion that launches a factual attack against jurisdiction, the district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009) (internal quotation marks omitted).

### III. Analysis

Count 5 alleges that Merck violated the Illinois Whistleblower Act by retaliating against Torres for filing a discrimination complaint with the EEOC. First Am. Compl. at 17-19. In response, Merck contends that this claim must be dismissed because it "is preempted by the Illinois Human Rights Act." Def.'s Br. at 1; *see also* Def.'s Resp. to Mot. for Leave at 1-4.

Starting with the text of the relevant statutes, the Illinois Whistleblower Act disallows, among other things, an employer from retaliating against an employee who reported an alleged legal or regulatory violation to a court or other government agency:

> An employer may not retaliate against an employee who discloses information in a court, an administrative hearing, or before a legislative commission or committee, or in any other proceeding, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation.

6

740 ILCS 174/15(a). Torres claims that Merck took him off a lucrative project and falsely lowered his performance ratings in retaliation for filing the discrimination claim with the EEOC. First Am. Compl. That sequence of events, taken as true at this stage in proceedings, would seem to fall squarely under the Whistleblower Act.

But Merck argues that the Illinois Human Rights Act prevents, in this employment setting, any other Illinois-law remedy for retaliation. The Human Rights Act sets forth an anti-retaliation provision:

> § 6-101. Additional Civil Rights Violations. It is a civil rights violation for a person, or for two or more persons to conspire, to:
>
> (A) Retaliation. Retaliate against a person because he or she has opposed that which he or she reasonably and in good faith believes to be unlawful discrimination, … discrimination based on citizenship status in employment, because he or she has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this Act ….

775 ILCS 5/6-101.

The Act also contains a "Limitation" clause: "Except as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act." 775 ILCS 5/8-111(D). And it created an administrative procedure to accept complaints. Specifically, the Act created the Illinois Department of Human Rights and the Human Rights Commission, and established extensive administrative procedures for investigating and reviewing civil rights charges and complaints. *See generally* 775 ILCS 5 arts. 7A, 7B, 8A, and 8B; 775 ILCS 8-103, 8-113.

The question, then, is whether Torres' retaliation claim, based on the reporting of a civil rights violation to a *federal* agency (the EEOC), can be litigated via the Illinois Whistleblower Act rather than through the Illinois Human Rights Act. Put another way, does the "jurisdiction" limitation provision in the Human Rights Act preempt a civil-rights-based whistleblower retaliation claim brought under the Illinois Whistleblower Act?[5]

To determine whether a claim is preempted by the Illinois Human Rights Act, Illinois courts use the "inextricably linked" test. That is, if a plaintiff's civil rights claim is "inextricably linked" to a civil rights violation as defined in the Human Rights Act "such that there is no independent basis for imposing liability apart from the Act itself," then that claim "must be litigated before the Commission—and only before the Commission." *Maksimovic v. Tsogalis*, 687 N.E.2d 21, 22 (Ill. 1997) (quoting *Geise v. Phoenix Co. of Chi., Inc.*, 639 N.E.2d 1273, 1277 (Ill. 1994) (internal quotation marks omitted)). *See also Blount v. Stroud*, 904 N.E.2d 1, 9-10 (Ill. 2009) (citing and using the test).

Inextricable linkage in Illinois case law depends on whether a claim is invoking the "legal duties" created by the Human Rights Act or can instead be established through an "independent" basis. *Maksimovic*, 687 N.E.2d at 22-23; *Blount*, 904 N.E.2d at 9. In the *Geise* case (as later explained by the Illinois Supreme Court in *Maksimovic*), the plaintiff's negligent hiring and negligent retention claims were preempted by the Act because they were based only on a legal

---

[5]Although the Illinois legislature used the term "jurisdiction" in the Illinois Human Rights Act, for the purposes of this Court's analysis, the "limitation" clause raises a preemption issue not a subject matter jurisdiction issue.

8

duty created by the Act: "[a]bsent the [Illinois Human Rights] Act's prohibition of sexual harassment, the employer's hiring and retention of an employee whose conduct created a hostile work environment would not have been an actionable tort." *Maksimovic*, 687 N.E.2d at 23. In other words, "in *Geise* the [Illinois Human Rights] Act furnished the legal duty that the defendant was alleged to have breached." *Id.*

*Maksimovic* applied the same test for preemption as deployed in *Geise*, namely, whether the proposed claim could be asserted without reference to the Human Rights Act. In *Maksimovic*, the plaintiff's assault, battery, and false imprisonment claims were not "inextricably linked" to her sexual harassment claim because she "alleged the elements of each of these torts without reference to legal duties created by the [Illinois Human Rights] Act" and thus "established a basis for imposing liability on the defendants independent of the Act." *Maksimovic*, 687 N.E.2d at 23. More specifically, the long-recognized, common-law claims of assault, battery, or false imprisonment are not dependent on the Human Rights Act, even if those claims relate to incidents of sexual harassment: "Assault, battery and false imprisonment existed long before the legislature became interested in sexual harassment and are intended to redress violations of bodily integrity and personal liberty…. [W]e can find nothing in the language of the Act, or the policy underlying it, which indicates that the legislature intended to preclude the circuit court from

exercising jurisdiction over all tort claims related to incidents of sexual harassment." *Id.* at 24.[6]

The upshot is that, in this preemption context, "inextricably linked" (as fuzzy a phrase as it is) has a concrete meaning under Illinois law: if the proposed claim need not refer to the Illinois Human Rights Act to state a valid legal claim, then there is no preemption. *Factual* overlap is *not* the dividing line between preemption or not. So merely because the facts underlying a claim *could* be fashioned into a claim under the Illinois Human Rights Act does not automatically mean it is preempted by that Act. "A retaliatory discharge claim is not preempted merely because it rests on facts that could also support a claim under the [Human Rights] Act, if the retaliatory discharge contravened some public policy other than the one embodied in the Act …." *Masud v. Rohr-Grove Motors, Inc.*, 2015 WL 5950712, at *8 (N.D. Ill. Oct. 13, 2015). *See also Thurman v. BMO Capital Mkts. Corp.*, 2011 WL 1004652, at *5 (N.D. Ill. Mar. 16, 2011) ("Plaintiff need not and does not rely on [the Illinois Human Rights Act] as the source of the duties giving rise to the [Illinois Whistleblower Act] retaliation claim."); *but see Garcia v. Complete Bldg. Maint. Co.*,

---

[6]*Blount v. Stroud*, cited by Torres, held that a common-law claim of retaliatory discharge could be brought outside of the Human Rights Act even though the Act has a provision on retaliatory discharge. *Blount*, 904 N.E.2d at 9-10. *Blount* is not, however, squarely on point here. Although *Blount* applied the "inextricably linked" test, the Illinois Supreme Court there relied on an independent *factual* basis for the common law claim (as distinct from the Human Rights Act retaliatory discharge claim). Specifically, the common-law retaliatory discharge claim was not "inextricably linked" to the Human Rights Act because the common-law claim asserted that the plaintiff was discharged for refusing to commit *perjury*, rather than for reporting a civil-rights violation. So the retaliatory discharge claim had an "independent basis": "the state's public policy against perjury, embodied in the state's criminal code." *Id.* at 10. *Blount* also pointed out that "the tort of retaliatory discharge was first recognized by this court in 1978, one year prior to the legislature's adoption of the [Human Rights] Act." *Id.* at 9.

2014 WL 652887, at *8 (N.D. Ill. Feb. 14, 2014) (determining that materially identical underlying facts means claims are inextricably linked for the purposes of Illinois Human Rights Act preemption analysis); *Alexander v. Ne. Ill. Univ.*, 586 F. Supp. 2d 905, 915 (N.D. Ill. 2008) (reading inextricably linked to mean, in part, "not … alleg[ing] any violations of laws or rules that would not be covered by the [Illinois Human Rights] Act").

So the real question, as framed in *Geise* and *Maksimovic*, is whether a plaintiff can state a claim without—either explicitly or implicitly—having to call upon the Illinois Human Rights Act to support it. If a claim can be brought independently from the Act, then that claim is *not* inextricably linked to the Act; it is "extricable" from it, as it were. Perhaps it would be better to discard the "inextricably linked" label, which is far from self-defining, in recognition of the real nature of the analysis, which is whether the Human Rights Act preempts the proposed claim because the Act is the sole source of the legal duty on which it is premised. If the answer to that question is yes, then the Act provides the sole cause of action.[7]

Turning now to this case, Torres' Whistleblower Act claim is premised on Merck's alleged retaliation for his filing of a discrimination charge with the EEOC. First Am. Compl. at 17-19. In the EEOC charge, Torres alleged that Merck had

---

[7]Nor does it matter, for the purposes of Human Rights Act preemption analysis, whether the proposed claim is a common law claim or a statutory claim. *Geise* and *Maksimovic* dealt specifically with common law claims, but nothing in the rationale of either case suggests a difference for proposed statutory claims. There still is no textual hook in the Human Rights Act for preempting other types of claims if those claims do not rely on the Act as the sole source for the legal duty asserted by the proposed claim.

11

violated the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-2 *et seq.* First Am. Compl. at 1, 9, 14. To support the Whistleblower Act claim, Torres specifically alleges that Merck engaged in retaliation for his reporting of alleged violations of *federal* law. *Id.* at 17-18 ("In 2016, Defendant and Plaintiff's immediate supervisors were critical of Plaintiff's disability, Rheumatoid Arthritis, his race and national origin and color and were aware that Plaintiff filed written complaints with the EEOC, a federal agency complaining about disability discrimination, race discrimination, and discrimination based upon his national origin and color.... All of the Defendant's intentional retaliatory acts above based upon Plaintiff's above written complaints against Defendant at the EEOC, a federal government agency, are in violation of the Illinois Whistleblower Act ….").

Torres thus is not calling upon the Human Rights Act to undergird his Whistleblower Act claim in any way. He is instead arguing that there was a breach of federal law reported to a federal agency, and that Merck later retaliated on that basis. That retaliation, in turn, violates the state Whistleblower Act. No mention of the Illinois Human Rights Act is needed at all, so there is no preemption.[8]

---

[8]It is worth noting that this result leaves the Illinois Human Rights Act's limitation clause, 775 ILCS 5/8-111(D), with a narrow preemptive scope (of course, the limitation clause still strictly limits how (and in what forums) claims brought *directly* under the Act must be asserted). But Illinois courts have not been willing to grant exclusivity to the Act without a more clear and plain expression of abrogation. *Maksimovic,* 687 N.E.2d at 24 ("legislative intent to abrogate the common law must be clearly and plainly expressed, and such an intent will not be presumed from ambiguous or doubtful language"). It might be appropriate for the Illinois state legislature to examine this issue.

## IV. Conclusion

Merck's motion to dismiss Count 5 is denied.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: June 8, 2017